Paul N. Tranel
Ryan T. Heuwinkel
BOHYER, ERICKSON, BEAUDETTE & TRANEL, P.C.
283 West Front, Suite 201
Post Office Box 7729
Missoula, Montana  59807-7729
Telephone: (406) 532-7800
Facsimile: (406) 549-2253
Email:  mail@bebtlaw.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

---

| | | |
|---|---|---|
| AMERICAN FIRE AND CASUALTY COMPANY, | ) ) ) | Cause No. _____ |
| Plaintiff, | ) ) ) | |
| -vs.- | ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| ASPEN MANAGEMENT, LLC; SAUNDERS OUTDOOR ADVERTISING, INC.; and BUTANA SAND AND GRAVEL, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

---

Plaintiff American Fire and Casualty Company ("AFCC"), through its

undersigned attorneys, brings this action under the Declaratory Judgment Act, 22

U.S.C. §§ 2201-02, against Defendants Aspen Management, LLC ("Aspen"),

Saunders Outdoor Advertising, Inc. ("Saunders"), and Butana Sand and Gravel, LLC

("Butana"), alleging as follows:

## NATURE OF THE ACTION

1.     This is an action for a declaratory relief under 22 U.S.C. § 2201 related to insurance coverage for a lawsuit pending in this Court, captioned *Saunders Outdoor Advertising, Inc. v. Aspen Management, et al.,* Cause No. CV-19-26-BU-SEH (the "Underlying Lawsuit"), which arises from Aspen's alleged breach of a Lease Agreement with Saunders during the sale of real property to Butana.  The Underlying Lawsuit also involves counterclaims alleged against Aspen by Butana related to Aspen's alleged breach of a buy-sell agreement for the same real property.

2.     AFCC seeks a declaratory judgment that (1) it has no duty to defend or indemnify Aspen under an insurance policy issued by AFCC to Aspen (the "Policy") with respect to the Underlying Lawsuit and (2) that it may recoup attorney fees, defense costs, and settlement sums paid on Aspen's behalf as authorized by Montana law.

3.     A declaratory judgment is appropriate in this matter because Aspen claims it is entitled to insurance coverage from AFCC with respect to the Underlying Claims and AFCC disputes that it has any duty to defend or indemnify Aspen. Declaratory relief is also proper because AFCC is providing Aspen a defense to the Underlying Lawsuit under a reservation of rights at the same time Aspen seeks this declaratory judgment.

4.      Saunders and Butana are proper parties to this declaratory judgment action because they may be affected by a finding that AFCC owes no duty to defend or indemnify Aspen with regard to the Underlying Lawsuit.

## THE PARTIES

5.      Plaintiff AFCC is a corporation organized under the laws of New Hampshire with its principal place of business in Boston, Suffolk County, Massachusetts.

6.      Defendant Aspen is a Montana Limited Liability Company with its principal place of business in Butte, Montana.  Its members are Scott Haeffner and Georgann Haeffner, both of whom are citizens of Montana.

7.      Defendant Saunders is a Utah Corporation with its principal place of business in Ogden, Utah.

8.      Defendant Butana is a Montana Limited Liability Company with its principal place of business in Butte, Montana. Its members are Rex Leipheimer and Johnathan Jeffrey, both of whom are citizens of Montana.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

10.    This Court has personal jurisdiction over Aspen because it is a Montana Limited Liability Company with its principal place of business in Butte, Montana and whose members are residents of Montana.

11.    This Court has personal jurisdiction over Saunders, because, although it is a Utah Corporation, it is found in Montana for purposes of personal jurisdiction and also owns and operates outdoor advertising signs in Montana, transacts business in Montana, and enters into contracts for services to be rendered and materials to be furnished in Montana.  Moreover, Saunders filed the Underlying Lawsuit in Montana to recover for its allegedly lost profits and business opportunities in Montana.

12.    This Court has personal jurisdiction over Butana because it is Montana Limited Liability Company with its principal place of business in Butte, Montana and whose members are residents of Montana.

13.    The amount in controversy exceeds the sum of $75,000, exclusive of exclusive of interest and costs, because Saunders and Butana have each alleged in the Underlying Lawsuit that their damages exceed $75,000, exclusive of interests and costs.  In addition, AFCC is currently providing a defense to Aspen in the Underlying Lawsuit and any attorney fees and costs paid by AFCC further contribute to the amount in controversy.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Aspen and Butana reside in the District of Montana and because a substantial part of the events giving rise to this action occurred within the District of Montana.

15.    Venue is proper in the Butte Division of this Court pursuant to Local Rule of Procedure 3.2(b) because Defendants are residents of Butte-Silver Bow County, Montana and Butte-Silver Bow County, Montana lies within the Butte Division of this Court.

16    Title 28 U.S.C. § 2201 authorizes this Court to grant the relief requested by AFCC.

## FACTS

17.    Aspen formerly owned property located at 1901 Franklin Street, Butte, Montana (the "Franklin Property").  The Underlying Lawsuit arises out of Aspen's sale of the Franklin Property to Butana.

18.    Aspen was insured under AFCC Policy No. BKA (19) 57 90 27 00 issued to Aspen  for the policy period of July 15, 2018 to July 15, 2019 (the "Policy").  The Policy was cancelled by Aspen, effective February 13, 2019.  The Franklin Property is a designated Premises under the Policy.  The Policy includes various coverage forms, including a Commercial General Liability Coverage Form, CG 00 01 04 03, which contains pertinent coverages for "Bodily Injury and Property Damage Liability," Coverage A, and "Personal and Advertising Injury Liability," Coverage B.  A certified copy of the Policy is attached as **Exhibit A**.

19.    On or about June 27, 2019, Aspen was served with Saunders' initial Complaint in the Underlying Lawsuit.  Saunders filed the operative Second Amended Complaint on September 13, 2019.  **Exhibit B**.

20.    Aspen tendered the Underlying Lawsuit to AFCC for coverage.  AFCC denied coverage via letter dated July 18, 2019 because there was no coverage for allegations in the Complaint.  **Exhibit C**.

21.    On October 1 , 2019, Butana filed its Answer to Second Amended Complaint and Crossclaims against Aspen.  **Exhibit D**.

22.    On October 30, 2019, Aspen's Scott Haeffner tendered Butana's Crossclaims to AFCC for defense and indemnification.  At that time, Aspen made AFCC aware of the Second Amended Complaint, of which AFCC requested a copy.

23.    AFCC followed up with Aspen and its attorney requesting copies of the Second Amended Complaint on November 7, 8, 18, 20, and 21, 2019 before ultimately receiving the Second Amended Complaint on November 21, 2019.

24.    On November 26, 2019, AFCC wrote Aspen acknowledging receipt of the Second Amended Complaint and Butana's Crossclaim and advising that it was investigating coverage under a reservation of rights.   The letter advised that AFCC would provide its coverage decision to Aspen in writing once the investigation was complete.  **Exhibit E.**

25.    On January 15, 2020, AFCC sent Aspen a Reservation of Rights ("RoR") letter advising Aspen that while there may not ultimately be coverage for the Underlying Lawsuit, AFCC was providing Aspen a defense to the Underlying Lawsuit while AFCC continued its investigation, subject to a complete reservation of  AFCC's rights under law, equity, and the insurance policy, including AFCC's right to

withdraw the defense and/or seek a declaratory judgment that the Company has no duty to defend or indemnify Aspen with regard to the Underlying Lawsuit.  The letter further advised that AFCC was entitled to recoup all attorneys' fees, defense costs, and indemnity payments expended on behalf of Aspen.  A copy of the RoR is attached as **Exhibit F**.

## THE UNDERLYING LAWSUIT

26.     Saunders' allegations against Aspen in the operative Second Amended Complaint of the Underlying Lawsuit are as follows:

a.     Saunders owns and operates outdoor advertising signs across the country, including Montana.

b.     On or about February 28, 2013, Defendant Aspen owned property generally described as a portion of Homestead Entry No. 1577 (H.E. 1577) located in Section 24, Township 3 North, Range 8 West, P.M.M., Butte-Silver Bow County, State of Montana (hereinafter "Property").[1]

c.     On February 28, 2013, Saunders entered into a Lease Agreement (hereinafter "Lease") with Defendant Aspen which allowed Saunders to erect an outdoor billboard on the Property.

d.     Thereafter, Saunders erected a billboard on the Property, which still exists today.  It is obvious and visible from the adjoining highway and roads.

---

[1] The "Property" is an individual parcel of land that is part of the greater "Franklin Property."

e.      The Lease provided for a 15-year term, which was automatically extended by an additional 15 year term unless terminated by Saunders.

f.      The Lease also included a right of first refusal granting Saunders the right to purchase the Property, and required Aspen to provide Saunders notice and a 30-day right to purchase on the same terms if Aspen decided to sell the Property.  This right was an integral part of the Lease given the difficulty in locating and renting alternative sign locations nearby.

g.      On February 8, 2019, Aspen by and through its Manager Scott Haeffner, called Saunders to say that it was going to sell the Property, with the closing set for 5:00 PM February 12, 2019.  Scott Haeffner also stated he and the buyer had discussed the right of first refusal contained in the Lease in their negotiations.

h.      This call was not proper notice under the Lease, which required 30 days written notice to allow Saunders the option to buy the Property instead of a potential third-party buyer.

i.      During the February 8, 2019 call, Scott Haeffner also requested that Saunders waive its right of first refusal before the Butana closing. Saunders refused to waive its right, but agreed to meet before closing on the morning of February 12, 2019.

j.      Unbeknownst to Saunders, Scott Haeffner and Aspen already agreed to the sale, and actually closed on the Property on February 11, 2019,

before the represented closing date and meeting with Saunders, and recorded a

Warranty Deed selling and transferring the Property to Defendant Butana.

k.     The sale and transfer between Aspen and Butana included 3

parcels, one of which was the Property.

l.     Upon information and belief, the sale price was hundreds of

thousands of dollars.

m.     Upon information and belief, in order to have an argument against

complying with the right of first refusal condition in the Lease, Aspen and

Butana intentionally did not itemize or designate a value for each of the 3

parcels, including the Property.

n.     Saunders never waived its right of first refusal in the Lease.

o.     Saunders considers its right of first of refusal provisions in leases

important to protect its business, due to the nature of the outdoor advertising

industry and the extremely limited ability to find and add lawful sign locations.

p.     Saunders paid all rental payments of $250 per month, on time, from

the inception of the lease, which were accepted and deposited by Aspen through

April 1, 2019, which included 48 days' worth of rent after the Butana closing.

q.     Once the Buyer was disclosed, Saunders offered a new lease to

Butana and Leipheimer with a slightly longer term.  However they refused to

sign a new lease, and stated they would only honor Saunders' primary term

tenancy through 2028.

r.      Saunders sent the April 2018 rent payment to Aspen, but it was returned by the U.S. Postal Service as undeliverable.

s.      Leipheimer and Butana have stated they are not bound by all provisions of the Lease, including the secondary term and the right of first refusal.

t.      Butana refuses to allow Saunders to acquire the Property.

27.     Based on these allegations, Saunders alleges a single cause of action against Aspen for breach of contract, alleging that Saunders breached the Lease by, among other things, "failing to provide Saunders with the required notice and right to purchase and selling the property to Butana."

28.     Saunders alleges Aspen's breach of the Lease damaged Saunders through a "prospective loss of its rights to occupy and lease the Property through 2043, loss of its ability to secure the site and purchase fee title interest in the Property, loss of such fee title interest, and lost profits from the ability to possess the Property and advertise on it thereafter."

29.     Butana's allegations against Aspen in the Underlying Lawsuit, pleaded in its Answer to Second Amended Complaint and Crossclaims are as follows:

a.      On January 11, 2019, Butana and Aspen entered into a buy-sell agreement for the purchase of certain real property commonly known as 1901 Franklin Street, Butte, Montana [the "Franklin Property"] ("Buy-Sell"). ¶ 7.

b.      Pursuant to the Buy-Sell, the closing date was scheduled for

February 12, 2019, but was subject to change upon mutual agreement by the parties.

c.      Pursuant to the Buy-Sell, possession of the Franklin Property would occur at the time of funding.

d.      Pursuant to the Buy-Sell, any and all leases relating to the Franklin Property were to be transferred to Butana, with rents of said leases to be pro-rated to the date of closing and any deposits to be given to Butana at closing.

e.      Pursuant to the Buy-Sell, Aspen agreed to convey the Franklin Property by warranty deed, free of all liens and encumbrances; as well as any and all security deposits, rental agreements, property condition reports and other documentation in regard to any parts of the property occupied by tenants.

f.      Pursuant to the Buy-Sell, Aspen agreed that no additional encumbrances, restrictions, easements or other adverse title conditions would be placed against the title to the Franklin Property following the effective date of the preliminary title commitment approved by Butana.

g.      Shortly after entering into the Buy-Sell, Aspen's real estate agent, Linda Hammar, provided Butana with a paper file containing hard copies of various lease agreements that would transfer with the Franklin Property. Aspen's lease with Plaintiff Saunders Outdoor Advertising, Inc. [the Lease] was not  included in the file.  However, around this time, the parties discussed the

existence of the [Lease] and that it would be transferring with the sale of the
Franklin Property.

      h.     A couple of weeks before closing on the Franklin Property, Butana,
Aspen, and Ms. Hammar met at the Franklin Property to conduct a
walk-through of the property and to discuss the terms of the buy-sell, including
without limitation the existing lease agreements relating to the Franklin
Property.  At this meeting,  Ms. Hammar provided Butana with a hard copy of
the lease agreement between Aspen and Saunders dated February 28, 2013 [the
Lease].

      i.     At the meeting, Aspen also represented that it had discussed the
change in ownership with Saunders and that Saunders agreed that Butana could
assume the Lease on the exact same terms as in the Lease, including without
limitation the start date of February 20, 2013 and the Lease term of two fifteen
year terms for a total of thirty years, expiring in 2043.  Aspen further indicated
that Butana would need to sign a new lease, but that said lease would mirror the
terms  of the Lease.

      j.     Pursuant to the Lease, its term was for a period of 15 years, which
automatically extended for an additional 15 years unless otherwise terminated
by Saunders at least at least 120 days prior to the end of the first term.

      k.     On multiple occasions before closing on the Franklin Property,
both Aspen and Ms. Hammar represented to Butana that Butana could assume

the Lease without any changes to the language or terms therein and that
Saunders would be  releasing the right of first refusal contained within said
Lease.

l.      On February 11, 2019, the parties closed on the Franklin Property.

m.      No lease documents were presented to Butana at the closing, which
Butana did not think anything of at the time because it believed the agreed upon
[Lease] would be forthcoming from Saunders; nor did it believe the new [Lease]
was integral to closing.

n.      Later in the day on February 11, 2019, the title company called
Butana indicating that it needed to come back to sign a lease that was
inadvertently omitted at closing.  Accordingly, Butana returned to the title
company to sign the lease.  The lease as presented, which was a lease with
Saunders, contained terms that were different from what Butana previously
agreed to.  Specifically, the lease term started on February 11, 2019 (not
February 20, 2013) and had two twenty year lease terms, thereby expiring in
2059 (not 2043) ("New Lease").

o.      Because the terms of the New Lease extended the lease term by
sixteen (16) years and contained different terms than what Butana agreed to,
Butana did not sign it.

p.      Thereafter, Saunders refused to allow Butana to assume the Lease
and, instead, demanded that Butana sign the New Lease or revisions thereto.

q.      Before Saunders' filed the original Complaint in this matter, Butana ultimately agreed to assume the New Lease, which Saunders rejected and, instead, requested that Butana grant Saunders a perpetual easement on the Franklin  Property.

r.      Butana contacted Aspen to aid in assuming the Lease with Saunders, which Aspen wholly ignored.

s.      Aspen refused to cooperate or otherwise assist Butana in securing a  lease between Butana and Saunders.

t.      Butana is a bona fide purchaser for value.

u.      The Franklin Property is comprised of three (3) parcels, which are integral to one another.

v.      Butana would not have purchased the Franklin Property without purchasing all three (3) parcels.

w.      Upon information and belief, no reasonable person would purchase the Franklin Property without all three (3) parcels together.

x.      Upon information and belief, the Franklin Property was for sale for at  least a year before Butana purchased it.

y.      The Franklin Property is zoned for heavy industrial use.

z.      Butana operates a sand and gravel company.  In order to successfully operate its business, Butana needs land that is zoned for heavy industrial use.

COMPLAINT FOR DECLARATORY JUDGMENT                                                    Page 14

aa.    Since closing on the Franklin Property, Butana has spent approximately fifty to one hundred thousand dollars ($50,000.00-$100,000.00) in improvements on the Franklin Property.

bb.    Butana uses the Franklin Property to store its materials, equipment, and other heavy machinery.

cc.    Butana receives income from at  least five tenants that occupy/lease portions of the Franklin Property.

dd.    Saunders filed a Complaint against Butana and, in its most recent pleading, has alleged three separate claims against Butana relating to the Franklin Property.

ee.    Saunders is now claiming a property interest in the Franklin Property and is asking the Court to void the Buy-Sell and corresponding sale of the Franklin Property.

ff.    Saunders' claims against Aspen and Butana affects Butana's ownership of the Franklin Property, including the marketability of the title to the  Franklin Property.

gg.    If the Court voids the Buy-Sell and corresponding sale of the Franklin Property as requested by Saunders, Butana anticipates its damages will be at least five hundred thousand dollars ($500,000.00), which is based upon the improvements that have been made, and will continue to be made, on the

Franklin Property and in moving costs, finding a replacement property, lost income, etc.

hh.    As a result of Saunders' claims against Butana and corresponding litigation, Butana has incurred and, will continue to incur, attorney's fees and costs.

30.    Based on these allegations, Butana allege four causes of action against Aspen: Count I, for breach of contract for allegedly breaching the Buy-Sell by failing to transfer all of its leases to Butana, failing to convey the Franklin Property free of all liens and encumbrances, failing to convey all rental agreements to the Franklin Property, and failing to convey the Franklin Property free of any adverse title conditions; Count II, for negligent misrepresentation, for Aspen's alleged misrepresentations regarding the Lease and Butana's ability to assume the Lease on the exact same terms as Aspen; Count III for breach of the implied covenant of good faith and fair dealing, for allegedly failing to disclose or concealing facts during the course of the sale of the Franklin Property to Butana; and Count IV, for unjust enrichment, which alleges that in the event the court in the Underlying Lawsuit voids the Buy-Sell, Aspen has been unjustly enriched by accepting Butana's money and improvements to the Franklin Property despite Aspen's wrongdoing during the sale.

## THE INSURANCE POLICY

31.     Coverage A of the Policy provides that AFCC "will pay those sums that [Aspen] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [AFCC] will have the right and duty to defend [Aspen] against any 'suit' seeking those damages. However, [AFCC] will have no duty to defend [Aspen] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."   Ex. A, at AF&CC 000088.

32.     Coverage A further provides that it "applies to 'bodily injury' and 'property damage' caused by an 'occurrence' that takes place in the 'coverage territory' only if:

(1)     The 'bodily injury' or 'property damage':
  (a)     Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
  (b)     Arises out of the project or operation shown in the Schedule; [and]
(2)     The 'bodily injury' or 'property damage' occurs during the policy period …"

Ex. A, at AF&CC 000032, 88.

33.     The Policy provides that the "premises shown in the Schedule" is the Franklin Property.  Ex. A, at AF&CC 000032.

34.     The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Ex. A, at AF&CC 000101.

35.     The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Ex. A, at AF&CC 000103.

36.     The Policy defines "property damage" as:

a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Ex. A, at AF&CC 000103-104.

37.     The Policy provides that Coverage A does not apply to:

**Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Ex. A, at AF&CC 000089.

38.     The Policy provides that Coverage A does not apply to:
**Damage To Property**

(1)     Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)     Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

COMPLAINT FOR DECLARATORY JUDGMENT                                    Page 18

Ex. A, at AF&CC 000092.

39.    The Policy provides that Coverage A does not apply to:

> **Damage To Impaired Property Or Property Not Physically Injured**
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Ex. A, at AF&CC 000092.

40.    The Policy defines "Impaired property" as:

> tangible property… that cannot be used or is less useful because: …
> b.    You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by … your fulfilling the terms of the contract or agreement.

Ex. A, at AF&CC 000101.

41.    Coverage B of the Policy provides that "[AFCC] will pay those sums that [Aspen] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. [AFCC] will have the right and duty to defend [Aspen] against any 'suit' seeking those damages. However, [AFCC] will have no duty to defend [Aspen] against any 'suit' seeking damages for 'personal

and advertising injury' to which this insurance does not apply." Ex. A, at AF&CC

000093.

42.     The Policy defines "personal and advertising injury" as "injury, including

consequential 'bodily injury', arising out of one or more of the following offenses:"

> a.     False arrest, detention or imprisonment;
> b.     Malicious prosecution;
> c.     The wrongful eviction from, wrongful entry into, or
> invasion of the right of private occupancy of a room,
> dwelling or premises that a person occupies, committed by
> or on behalf of its owner, landlord or lessor;
> d.     Oral or written publication, in any manner, of material
> that slanders or libels a person or organization or disparages
> a person's or organization's goods, products or services;
> e.     Oral or written publication, in any manner, of material
> that violates a person's right of privacy;
> f.     The use of another's advertising idea in your
> "advertisement"; or
> g.     Infringing upon another's copyright, trade dress or
> slogan in your "advertisement".

Ex. A, at AF&CC 000103.

43.     The Policy provides that Coverage B does not apply to:

> **Knowing Violation Of Rights Of Another**
> "Personal and advertising injury" caused by or at the
> direction of the insured with the knowledge that the act
> would violate the rights of another and would inflict
> "personal and advertising injury".

Ex. A, at AF&CC 000094.

44.     The Policy provides that Coverage B does not apply to:

> **Breach Of Contract**
> "Personal and advertising injury" arising out of a breach of
> contract, except an implied contract to use another's
> advertising idea in your "advertisement".

Ex. A, at AF&CC 000094.

45.     Because there is no coverage for the Underlying Lawsuit under these provisions, AFCC has no duty to defend or indemnify Aspen and is entitled to recoup attorney fees, defense costs, and any indemnity payments it pays or has paid with regard to the Underlying Lawsuit.

## COUNT I DECLARATORY JUDGMENT

46.     AFCC incorporates all of the preceding allegations as if set forth fully herein.

47.     Under Coverage A of the Policy, insurance coverage is provided only for sums Aspen becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" and only if (a) the "bodily injury" or "property damage" occurs during the policy period and on the premises shown in the Schedule or (b) coverage is not otherwise excluded.

48.     The Underlying Lawsuit does not seek damages for "bodily injury" or "property damage" caused by an "occurrence" as defined by the Policy.

49.     Moreover, the Underlying Lawsuit does not allege"bodily injury" or "property damage" occurring during the policy period and on the premises shown in the Schedule, namely the Franklin Property.

50.     Accordingly, under Coverage A, AFCC has no duty, and has never had any duty, to defend or indemnify Aspen against the Underlying Lawsuit.

51.     Even if Coverage A of the Policy is triggered, coverage for the Underlying Lawsuit is barred by Exclusion 2.a of Coverage A for "Expected or Intended Injury" because any damages sustained by Saunders or Butana were expected or intended to flow from Aspen's conduct.

52.     Even if Coverage A of the Policy is triggered, coverage for the Underlying Lawsuit is barred by Exclusion 2.j of Coverage A for "Damage to Property" because any damages suffered by Saunders or Butana are "property damage" to the Franklin Property, which is property Aspen owned or premises that Aspen sold.

53.     Even if Coverage A of the Policy is triggered, coverage for the Underlying Lawsuit is barred by Exclusion 2.m of Coverage A for "'property damage' to 'impaired property' or property that has not been physically injured, arising out of: … A delay or failure by [Aspen] to perform a contract or agreement in accordance with its terms."

54.     Under Coverage B of the Policy, insurance coverage is provided only for sums the insured becomes legally obligated to pay as damages because of "personal and advertising injury to which this insurance applies."  The Underlying Lawsuit does not seek damages for "personal and advertising injury" as defined by the Policy. Thus, under Coverage B, AFCC has no duty, and has never had any duty, to defend or indemnify Aspen against the Underlying Lawsuit.

55.     Even if Coverage B of the Policy is triggered, coverage for the Underlying Lawsuit is barred by Exclusion 2.a for "Knowing Violation Of Rights Of Another" because any "personal and advertising injury" suffered by Saunders or Butana was caused by or at the direction of Aspen with the knowledge that the act would violate Saunders' and/or Butana's rights and would inflict "personal and advertising injury" on Saunders and/or Butana.

56.     Even if Coverage B of the Policy is triggered, coverage for the Underlying Lawsuit is barred by Exclusion 2.f for "Breach of Contract" because any "personal and advertising injury" suffered by Saunders or Butana arises of out Aspen's breach of the Lease and/or the Buy-Sell.

57.     Because AFCC has no duty to defend or indemnify Aspen against the Underlying Lawsuit, AFCC is entitled to recoup defense fees and costs, including attorney's fees, expert witness fees, and other costs, as well as any settlement sums or other indemnity payments, that it pays or has paid on Aspen's behalf.

WHEREFORE, AFCC requests that this Court enter Judgment against Defendants as follows:

A.     Declaring that AFCC does not owe and has never owed a duty to defend or indemnify Aspen in relation to the Underlying Lawsuit;

B.     Ordering Aspen to reimburse AFCC for sums paid in defense and/or settlement of the Underlying Lawsuit, including prejudgment interest on those sums;

COMPLAINT FOR DECLARATORY JUDGMENT                                     Page 23

C.      Declaring that Saunders and Butana may not collect any judgment or

settlement on the Underlying Lawsuit from the Policy;

D.      Ordering that Aspen pay AFCC is reasonable attorney fees, expert

witness fees, and costs incurred in prosecuting this lawsuit; and

E.      Providing further relief the Court deems necessary.

DATED this 24th day of January, 2020.

                                  /s/ Ryan T. Heuwinkel
                                  Ryan T. Heuwinkel
                                  BOHYER, ERICKSON,
                                  BEAUDETTE & TRANEL, P.C.
                                  Attorneys for Plaintiff